## CIRCUIT COURT OF BALTIMORE CITY.

Filed February 24, 1898.

IN THE MATTER OF THE TRUST ESTATE OF GEORGE P. PRESBURY.

*D. K. Este Fisher* for Mrs. Van Bibber.

*David Stewart, Joshua Horner, Jr.,* and *Edward Duffy* for the Sykes' legatees.

WICKES, J.—

The late George G. Presbury died in June, 1883, and his will was admitted to probate on the 12th day of the month.

By the third item he provided as follows:

"I give and bequeath to Frank X. Jenkins, for my dear adopted nephew, James Sykes, thirty thousand dollars ($30,000), which sum and whatever other sum he, the said James Sykes, may be entitled to under this, my will, in trust, to invest the same and the income, or as much of said income as may be necessary to apply to the support, education and maintenance of said James Sykes until the said James Sykes shall attain the age of twenty-five years, when the said trustee shall pay to him said sum and the income that may have accrued thereon."

The testator then provides in the same item for the widow and children, if he shall die leaving either or both, and then as follows: "If he die leaving no widow, or no child or children, then the sum to which he would be entitled is to be divided as follows: To his mother, Mrs. Imogene E. Sykes, the sum of five thousand dollars ($5,-000); to his sister, Lina Sykes, five thousand dollars ($5,000); to Harry Lee Sykes, five thousand dollars ($5,-000); to Charles II. Sykes five thousand dollars ($5,000); and the residue to Mrs. Mary Van Bibber, wife of Dr. John Van Bibber."

By the twelfth item of the will, the testator divides equally between Mrs. Van Bibber and James Sykes the "residue of my estate," and provides "that the share of James Sykes shall be held in trust by Frank X. Jenkins under the same terms as are set forth in the 3rd item of this will." James Sykes died before he attained the age of twenty-five, leaving no widow or children.

The testator left legacies amounting to $95,000, to be paid after the death of his widow—he left an estate largely exceeding in value the amount of the legacies.

Now, however, since the death of the widow and the final settlement of the estate, it is ascertained that only about $80,000 remains, and that only about $24,000 can be applied to the payment of the legacies under the 3rd item of the will, instead of $30,000, and the question presented for decision is whether the deficiency is to fall on the "residue" left to Mrs. Van Bibber, or whether all the legacies provided for under this item shall abate proportionably.

It is conceded that if instead of "residue," the testator had said residue of the $30,000, or remainder or balance or any other term or expression that indicates his intention to deal with a fixed and definite sum that then no question could arise as to the application of the rule which requires all legacies of the same class to abate when the fund is insufficient to pay them. But it is supposed that because the testator provided not only for the payment of $30,000 to the trust for James Sykes, but an additional sum, to wit, one-half the residue of the estate; that thereupon, the sum given to Mrs. Van Bibber is not a definite

sum, to wit, the difference between the four legacies of $5,000 each, and the $30,000 named, but that her legacy was intended to be $10,000, plus the one-half the residue of the estate, and that because of the uncertainty thus created that the rule does not apply. In other words, if I have correctly understood the contention on behalf of the four legatees, it is that because the testator intended that Mrs. Van Bibber should receive two-sixths of $30,000, with whatever sum of money might be added to it from the residuary estate; that because there is not only no residuary estate, but not enough to pay the $30,000, that therefore the loss is to fall on her share, not because the testator intended her to have less than two-sixths, but because it was made uncertain by his effort to increase it.

The leading case on this subject is Page vs. Leapingwell, 18 Vesey 463.

There the testator devised to trustees his house, called Midfon Castle, with appurtenances, furniture, &c., upon trust to sell them by an auction or otherwise for not less than £10,000, and out of the proceeds to pay certain legacies, and "after payment of the legacies above mentioned," he directed his trustees to invest "all the surplus moneys arising from the sale" in the public fund for his widow and Sir Thomas Hyde Page, equally. Sale was made under a decree and yielded only £7,000, an amount insufficient to pay all the pecuniary legacies in full, and the question was whether any of the proceeds of the sale were to be paid to Page under the bequest of one-half of the "surplus money."

The Master of the Rolls, Sir Wm. Grant, in delivering the judgment of the Court, said: "I think the same construction does not apply to this disposition of £10,000 as would be applicable to a general residuary clause. The question is whether the testator did not assume that he had £10,000 to distribute and made his distribution upon that supposition. * * * As to the mandatory clause, I refer to it only as showing the intention, and that he made his will upon the clear supposition that he had at least £10,000 to portion out in this manner. *He thought there might be more*, and in that event he meant to give these parties the surplus, whatever it might be. * * * It is no new thing to put a different con-

struction upon the word *surplus* from that which it commonly bears. Why may not I infer from the expressions in this will, that the testator did not mean what the word 'over-plus' usually imports, viz., whatever shall turn out to be overplus; but that he was contemplating a certain overplus, and was making his disposition accordingly. I conceive the true intention to have been that these persons should take as specific legatees, and therefore they must abate among themselves."

The doctrine of this case has been affirmed and reaffirmed over and over again—as for example, in Wright vs. Western, 26 Beavan, 429. Sir John Romilly, M. R., said: "The testatrix proposes to dispose of a specific sum of £1,000, which she gives as follows: as to £100 to one person, as to £400 to another, and as to all the residue to a third. Page vs. Leapingwell exactly applies. Nothing turns on the residue of the £1,000, being coupled with a gift of the general residue; they must be taken separately."

And again, in Harley vs. Moon, 1 Drewry & Smales, R. 626. The Vice-Chancellor delivering the opinion of the Court said: "If a testatrix has power to dispose of a definite sum, for example, £600, and says I give £100 to A, and £100 to B and the remaining £400 to C, of course the sum of £400 is given just as specifically to C, as the two sums of £100 each are given to A and B. If instead of using that language the testatrix says, I give £100 each to A and B, and the remainder I give to C, without specifying the amount of the remainder, the Court has held that in the absence of anything showing a different intention, that the intention was to give the residue as a specific sum to C just as specifically as the gifts to A and B. That is the case of Page vs. Leapingwell, &c." And so in a large number of other cases the Courts have held that legacies appearing at first sight to be residuary may be shown by the testator's intention to be specific, in which case they will only abate with other specific legacies. When, however, a testator neither knows, nor assumes to know the amount of a fund, and after bequeathing certain portions thereof, he makes a bequest of the residue, the latter must be applied first in pay-. ment of debts, in other words, must bear the loss, in event of insufficiency of assets. This, it is earnestly contended, is the case now under consideration. Numerous authorities have been cited in illustration of this rule.

In Petre vs. Petre, 14 Beav. 197, where a testator having a power of appointment by will over £7,100 in 3¼ per cents., appointed £5,000, part of the trust fund to A, and $500 to B, and the "residue" to his son. The stock having become liable to the payment of debts, it was held by Sir John Romilly, M. R., that the residue was first applicable to their payment.

"The authority," he said, "of Page vs. Leapingwell, applies where the testator disposes of an estate which he assumes will produce a given sum, or with an ascertained fund, in which case it is indifferent, whether after he has given certain portions, he specifies the remainder by stating its amount, or by comprising it under the term 'residue.' But in this case, so far from knowing the amount of the fund, the testator could have no conception of it, for it was impossible to ascertain the amount until the fund had been realized by a sale, and the charges on it known. If, in this case, it appeared that the testator thought he was dealing with a sum of £7,100 *sterling*, and he had divided it into different proportions, the loss would then fall on all the persons interested in proportion to their shares, although the last portions were called 'the residue,' but that is not the case here."

So in Baker vs. Farmer, 3 Ch. App. Cases 541, the Court said: "The executors were to sell all that was necessary of the household furniture and residuary estate for the payment of the debts and legacies, and it was not until all that was necessary for that purpose was disposed of, that anything was given to the residuary legatee." How can this be compared to Page vs. Leapingwell, where a definite fund was ascertained? * * * And, again: "The testator makes a common fund, and tells the executors to pay the debts and legacies, and gives the uncertain residue to the residuary legatee. This brings the case within the authority of Harley vs. Moss (Supra)." In Raikes vs. Raikes, 45 L. R. Ch. Divisn. 66, the latest English case, decided in 1890, the doctrine of Page vs. Leapingwell is recognized, but held not applicable to the facts before the Court. There the

testatrix directed her diamonds to be sold, but not for any definite price. The Court said: "It is not as if the testatrix had said, I direct my diamonds to be sold for not less than a sum of £1,300, and I thereout give £600 to the church and £700 to someone else; that would have amounted to a gift of the fund in specific proportions. But she has not done that. The foundation of the argument for the residuary legatee is the well known case of Page vs. Leapingwell," and then the Court proceeds to distinguish the two cases.

And, so, running through all the cases in which the rule is held not to apply is the element of uncertainty as to the amount to be distributed. Either the fund to be realized from the sale of the property is indefinite, and so dealt with by the testator, or, if definite, is subjected to the payment of debts or testamentary charges and expenses, and in all such cases the loss has been held to fall upon the residuary legatee.

But, when the testator had in his mind a definite and fixed sum, which might be increased, but could not as he understood and intended, be diminished, in all such cases the rule adopted in Page vs. Leapingwell must be held to apply. In other words, it comes back at last to the question: what was the testator's intention?

Now, dealing with Mr. Presbury's will in the light of these decisions, it is obvious. I think, that he believed he was providing for the distribution of at least $30,000, which "might be more," as the Court said in Page vs. Leapingwell, but which could not be less. His two favorite legatees were Mrs. Van Bibber and James Sykes; this is clear on the face of the will. The amount of property left was largely in excess of the legacies, and if, under these circumstances, he intended to divide the $30,000 into aliquot parts, Mrs. Van Bibber to take the "residue," or two-sixths of the whole, and whatever in addition should be derived under the twelfth item of the will, it scarcely seems logical to say that because there is no fund to be added under the twelfth item, and not enough to provide the $30,000 bequeathed by the third item, that therefore the testator intended that the entire deficiency should fall on the residuary legatee.

I am of the opinion these legacies must abate *pro rata*.